MELVIN E. MOORE v. JAMES WILLIAM YOUNG.

(Filed 15 January, 1965.)

**Judgments § 34;    Insurance § 61.1—**

> Plaintiff's action to recover damages resulting from a collision, in which action defendant filed a counterclaim for his damages, consent judgment was entered dismissing the action as of nonsuit "without prejudice to defendant's counterclaim," presumably upon payment to plaintiff by defendant's liability insurer. *Held:* The consent judgment precludes plaintiff from thereafter setting up his claim or going forward with the evidence, and entitles defendant to prosecute his counterclaim, notwithstanding the possibility of the anomalous result, under the circumstances, of defendant recovering against plaintiff on the counterclaim.

APPEAL by plaintiff from *May, J.,* February 1964 Civil Term of JOHNSTON.

Plaintiff instituted this action in May 1961 to recover for personal injuries sustained in a collision between his 1953 Cadillac automobile and defendant's 1950 Chevrolet pickup truck on April 29, 1961, about 4:00 p.m. Plaintiff alleged that the collision occurred when defendant, while under the influence of intoxicants, drove his truck to his left of the center of Highway No. 242 into the path of plaintiff's automobile. Answering, defendant denied that he was negligent and alleged that the collision resulted when plaintiff, traveling at a high rate of speed, lost control of his vehicle, ran off the pavement onto the shoulder, came back onto the pavement, and skidded across the highway into defendant's lane of travel. Defendant counterclaimed for his damages. By reply, plaintiff denied the allegations of the answer, and, in bar of the counterclaim, he pled (1) defendant's contributory negligence and (2) defendant's conviction of the crime of involuntary manslaughter for the death of plaintiff's wife in the collision in suit.

On September 6, 1962, the Clerk of the Superior Court entered a judgment reciting that "all matters and things in controversy in this action have been compromised, agreed, and settled, and that the plaintiff has elected to take a voluntary nonsuit of his claim." He thereupon dismissed the action as of nonsuit. This consent judgment was signed by plaintiff and by Levinson & Levinson, one of the two firms of attorneys representing plaintiff, as well as by one of the two firms representing defendant. On September 18, 1963, defendant moved the Clerk of the Superior Court to reform the consent judgment for that by mutual mistake the language "without prejudice to the defendant's counterclaim" had been omitted as the last six words of the judgment. The Clerk allowed this motion on September 23, 1963, by an order bearing the written consent of Levinson & Levinson, attorneys for plaintiff.

When the case was called for trial at the May Session 1963, defendant stipulated that, after entering a plea of not guilty, he had been convicted of involuntary manslaughter upon an indictment arising out of the collision in suit. Upon this stipulation, the judge dismissed defendant's counterclaim, and defendant appealed. This court, noting that the "consent judgment, which dismissed *plaintiff's action* 'as of nonsuit' was entered 'without prejudice to the defendant's counterclaim,'" reversed and directed the Superior Court to enter an order striking from plaintiff's reply the allegations relating to defendant's conviction of manslaughter. *Moore v. Young*, 260 N.C. 654, 133 S.E. 2d 510.

When the case was called for trial at the February 1964 Session, on the reinstated counterclaim, plaintiff successively made the following motions, each of which the court denied in its discretion, plaintiff excepting:

1.  Motion to file an amended complaint, verified February 17, 1964, but otherwise identical with the original.
2.  Motion to amend the reply, to allege, as a bar to the counterclaim, "settlement made with plaintiff on the cause of action alleged in the complaint." ·
3.  Motion for permission to read the complaint to the jury.
4.  Motion that plaintiff be allowed to go forward with the evidence.
5.  Motion that plaintiff be permitted to explain to the jury why defendant was going forward with the evidence.
6.  Motion that the court explain to the jury why defendant was going forward with the evidence.

Each party offered evidence tending to show that immediately preceding the collision the other had lost control of his vehicle and was to his left of the center of the highway in the other's lane of travel. In addition, plaintiff offered three witnesses each of whom testified that he (or she) had observed defendant about thirty minutes before the collision in question and that he was, in the witness' opinion, staggering drunk. One of the witnesses had refused defendant's invitation to ride with him because defendant was staggering and reeking of alcohol, and was "under the influence of alcohol." Defendant himself denied that he was drunk. He testified that he had had only two beers that day and those about 10:30 a.m. He offered other evidence tending to establish his sobriety at the time of the accident.

· The jury answered the issues of negligence and contributory negligence. in favor of defendant and assessed his damages at $25,000. From

judgment entered upon the verdict, plaintiff appeals, assigning as error the denial of the six motions made at the beginning of the trial, the admission of certain evidence, and the failure of the judge to comply with G.S. 1-180.

*Smith, Leach, Anderson & Dorsett for plaintiff.*
*J. R. Barefoot and C. C. Canady, Jr., for defendant.*

SHARP, J.  We deduce from this record that a settlement of plaintiff's claim against defendant was negotiated by and between plaintiff and defendant's liability insurance carrier without defendant's consent. Except that the settlement was made *after* plaintiff had instituted this action, and after defendant had asserted his counterclaim, presumably we would have had here a situation equivalent to that in *Beauchamp v. Clark,* 250 N.C. 132, 108 S.E. 2d 535.

It may be that the jury in this case, which found plaintiff negligent and defendant free of contributory negligence, and awarded defendant $25,000 damages for his personal injuries, was correct. If so, the jury which found defendant guilty of involuntary manslaughter in the death of plaintiff's wife in the accident in suit erred egregiously — as did defendant's insurance company, which, after investigation, concluded that defendant was solely liable for the collision and thereupon paid plaintiff his damages. But, be that as it may, we have here an anomalous situation, one not in the interest of the public, which is required to carry liability insurance and to pay for it premiums reflecting the liabilities imposed upon the carriers. The Motor Vehicle Financial Responsibility Act obliges a motorist either to post security or to carry *liability* insurance, not accident insurance to indemnify all persons who might be injured by the insured's car. *Keith v. Glenn,* 262 N.C. 284, 286, 136 S.E. 2d 665, 667. When the Legislature passed the act it was not in the legislative contemplation that each driver in a two-car collision would recover from the other's insurance carrier.

Plaintiff, having agreed that the settlement with defendant's insurance carrier was "without prejudice to the defendant's counterclaim," had no right to plead the settlement or put it in evidence.

"(T)he words 'without prejudice' have a distinct meaning in law, and . . . they import into any transaction that the parties have agreed that as between themselves the receipt of money by one and its payment by the other shall not, because of the fact of the receipt or payment, have any legal effect upon the rights of the parties in the premises, and that such rights will be as open to settlement by legal controversy as if the money had not been turned

over by the one to the other (citations omitted)." *Hinton v. Bogart,* 79 Misc. 418, 420, 140 N.Y. Supp. 111, 113 (App. T.).

After having agreed that the compromise of his claim should be without prejudice to defendant's counterclaim, and after having taken a voluntary nonsuit as to his cause of action, plaintiff was not entitled to reinstate his complaint for the purpose of going forward with the evidence or of showing that he had first instituted the suit. By the terms of the consent judgment, plaintiff had, in effect, agreed that defendant should take the offensive in any future litigation. Each of plaintiff's six motions was properly overruled.

Had the consent judgment dismissed both plaintiff's claim and defendant's counterclaim — the latter without prejudice to the right of defendant to prosecute it later in a separate action in which he would have been the plaintiff — , the rules laid down in *Bradford v. Kelly,* 260 N.C. 382, 132 S.E. 2d 886, and followed in *Keith v. Glenn, supra,* would have been applicable. In such later suit, plaintiff here (the same as defendant in *Bradford v. Kelly, supra*) could have pled as a counterclaim the cause of action he alleged in his complaint in this cause. Defendant, as plaintiff in the second action, would then have been put to the election the consequences of which are spelled out in *Keith v. Glenn, supra,* and *Bradford v. Kelly, supra.* If defendant had refused to permit the dismissal of his counterclaim when his insurance carrier settled with plaintiff, the court, upon plaintiff's motion, doubtlessly would have relabeled defendant's counterclaim as the complaint it was and would have permitted plaintiff to withdraw his reply theretofore filed and to file an *answer* setting up his own counterclaim. When *A* and *B* have mutual personal-injury claims growing out of an automobile collision, and the insurance carrier of *A*, without his consent, settles with *B*, and when, thereafter, *A* sues *B*, every trial lawyer and every judge knows that *B's* defense is suspect if he makes no claim against *A* for his injuries, the jury having no knowledge of the settlement. On the other hand, if, by some mischance, the jury should learn of the settlement, *A's* case is suspect. If, however, the case is tried as if no settlement had been made and all knowledge of it is kept from the jury, neither party is prejudiced by it. The jury evaluates the collision in gross and appraises both claims together. In such a case, all that either party is entitled to is a fair trial and, if judgment is rendered against him, credit for whatever his insurance carrier has paid the judgment creditor in discharge of its liability. *Keith v. Glenn, supra; Bradford v. Kelly, supra.*

In this case plaintiff made every conceivable motion except one to be allowed to withdraw his reply and file an answer setting up his own

counterclaim. Had he done so, the court applying the rationale of *Keith* and *Bradford, supra,* would no doubt have allowed the motion. Whether this procedure would have changed the course of events, no one can say, and speculation would be neither sensible nor profitable. Counsel for plaintiff presented plaintiff's evidence clearly and forcefully. If the jury, had accepted it, defendant could not have recovered. Unfortunately for plaintiff, the jury decided the facts against him. We have examined this record, with its implications, microscopically, yet appellant's assignments point out no reversible error. Needless to say, no question arises, on this appeal, as to the liability of plaintiff's insurance carrier upon the judgment rendered.

No error.